IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANGELIA TAYLOR,

    Plaintiff,

v.

MARYLAND DEPARTMENT OF
  HEALTH AND MENTAL
  HYGIENE,

    Defendant.

Civil Action No. RDB-18-0683

## MEMORANDUM OPINION

Plaintiff Angelia Taylor ("Plaintiff" or "Taylor"), an African-American female, brings this action against the Maryland Department of Health[1] ("Defendant"), alleging that she was discriminated and retaliated against on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, stemming from Personnel Action Records and unsatisfactory work performance evaluations she received which ultimately led to her termination. Currently pending before this Court is the Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment, which argues, *inter alia*, that the Plaintiff was terminated because she failed to improve her work performance to a satisfactory level within one-hundred and eighty days of receiving her first unsatisfactory performance evaluation, pursuant to Code of Maryland Regulations 17.04.05.03G(1). (ECF No. 15.) The parties' submissions have been reviewed, and no hearing is necessary. *See*

---

[1] The Plaintiff named the Defendant as the Maryland Department of Health and Mental Hygiene, which was the department's former name until July 1, 2017. The correct Defendant is the Maryland Department of Health, and the Clerk is directed to substitute the Defendant and re-caption this case accordingly.

1

Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendant's Motion (ECF No. 15), treated as one for Summary Judgment, is GRANTED and Judgment is ENTERED in favor of the Defendant.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). Plaintiff Taylor began working at Springfield Hospital Center ("Springfield") in September of 2006. (Compl., ECF No. 1 at ¶ 7.) Springfield is a regional in-patient psychiatric hospital operated by the Defendant Maryland Department of Health. (Schaeffer Aff., ECF No. 14-2 at ¶ 3; Md. Code Ann., Health-Gen § 10-406(a)(5).) At all relevant times, Taylor worked as a housekeeper and had the responsibility of maintaining clean and sanitary patient units. (Schaeffer Aff., ECF No. 14-2 at ¶¶ 4-5.) The Human Resources Officer at Springfield, Connie Schaeffer, testified to the importance of maintaining a clean and sanitary environment for the patients at Springfield, some of whom pose a high risk of violent and unpredictable behavior due to mental illness. (*Id.* at ¶ 4.) In order to carry out their job duties, housekeepers are given keys to their assigned units. (*Id.*)

Employees at Springfield receive mid-cycle and end-of-cycle performance evaluations. (Taylor Aff., ECF No. 18-4 at ¶ 3.) The evaluations consider overall work quality and twenty behavioral factors in the areas of work ethic, team-work, communication, customer service, initiatives, and work performance. (ECF No. 14-10.) The employee is rated for each factor on a scale of one through three, representing "unsatisfactory,"

"satisfactory," and "outstanding" respectively. (*Id.*) The employee's scores are then averaged for a total rating which also falls into one of the three categories. (*Id.*) Specifically, a total rating of 3.00-2.75 is outstanding, 2.74-1.75 is satisfactory, and 1.74-1.00 is unsatisfactory. (*Id.*) If an employee's total rating falls into the unsatisfactory range, the following Code of Maryland Regulations ("COMAR") provision is implicated:

G. Performance Appraisals.

> (1) When an employee has been given an overall rating of "unsatisfactory" on an annual performance appraisal, the employee's supervisor shall inform the employee that the employee has 180 days from issuance of the rating to improve to the level of "satisfactory". Approximately midway through the 180-day period, the employee and the employee's supervisor shall meet to evaluate the employee's progress toward a satisfactory rating. Failure to meet standards at the end of the 180-day period shall result in the employee's termination.

COMAR 17.04.05.03G(1), Disciplinary Actions Related to Employee Performance.

Taylor asserts that from 2007 to 2015, she received satisfactory performance ratings on all of her evaluations. (ECF No. 18-4 at ¶ 3.) On her last satisfactory end-of-cycle evaluation, covering July 1, 2014 through June of 2015, she specifically received a total rating of 1.90. (ECF No. 18-7.) Accordingly, her score fell in the "satisfactory" range, albeit at the low end. (ECF No. 18-7.) In "Tasks to be Achieved," her supervisor Jeffrey Belt wrote "[t]ry to come to work on time and use less of your leave." (*Id.*) In "Supervisor's Comments," he further wrote "[w]hen Angelia comes to work she does a very good job . . . . Angelia needs to work on her lateness and absentee (sic). I am here to help as much as I can to make your [s]ituation better." (*Id.*) An interoffice memorandum indicates that on her subsequent mid-cycle evaluation in December of 2015, Plaintiff received another satisfactory score. (*Id.*)

3

About a month before Plaintiff was scheduled to receive her end-of-cycle evaluation for July 1, 2015 through June of 2016, on May 13, 2016, Taylor's Registered Nurse Supervisor, Tabitha Trageser, a multi-racial female, prepared a Clinical-Support Services Statement Form concerning Taylor. (ECF No. 14-4.) Specifically, the Form indicated that Trageser had observed Taylor the day prior around 2:30 p.m. sitting in a chair in the hallway with her eyes closed and her head down. (*Id.*) Two other employees, Ben Sijera and Dana Showman, also filled out Clinical-Support Services Statement Forms explaining that they had similarly seen Taylor sitting in the hallway with her eyes closed and head down on May 12, 2016. (ECF Nos. 14-5, 14-6.)

On May 16, 2016, Plaintiff met with Trageser to discuss "rumors" she had heard about her work performance. (Taylor Aff., ECF No. 18-4 at ¶ 7.) Taylor denied that she was performing poorly, and told Trageser that she believed she was being "singled out for discriminatory treatment" due to her race and gender. (*Id.*) She also told Trageser that there was a Caucasian male housekeeper who had worked in the same unit before Taylor, who performed his job duties and assignments poorly but was never disciplined. (*Id.*) Later that day, Trageser filled out a Clinical-Support Services Statement Form describing her conversations with Taylor. (ECF No. 18-8.) She wrote that Taylor had entered her office upset and angry, talking about a "white guy" that was looking around her unit the Friday before with her supervisors. (*Id.*) In addition, a supervisor had stated that Taylor did not do her job and someone from her unit had called to complain. (*Id.*) According to Taylor, this was happening because she was a black female, and another Caucasian male had not been similarly disciplined. (*Id.*)

4

On May 17, 2016, Dan Triplett, the Director of Environmental Services for Taylor's unit, prepared a Personnel Action Record ("PAR") with respect to Taylor and the event that had occurred five days prior on May 12, 2016.[2] (ECF No. 14-3.) Plaintiff testified that although she never called anyone "the white guy," Triplett is the person to whom Trageser's Statement Form referred. (ECF No. 18-4 at ¶ 10.) Taylor further testified that prior to May 17, Triplett had never directly initiated a PAR against her. (*Id.*) The PAR described that Taylor was observed by three separate nursing employees around 2:30 p.m., sitting in a chair with her eyes closed and head down while patients were on the unit and in the immediate area. (ECF No. 14-3.) The PAR also indicates that a mitigating meeting was held in which Taylor denied that she had been in that condition. (*Id.*) Ultimately, Plaintiff was suspended five days for this incident. (*Id.*) The PAR is also signed by the Department Head, Jeffrey Belt. (*Id.*)

That same day—May 17, 2016—Dan Triplett generated two other PARs concerning Taylor. One described that on May 13, 2016, Taylor's unit was observed "in an unacceptable state in terms of cleanliness." (ECF No. 14-7.) Specifically, the area did not appear to have been dust mopped and the bathrooms and patient bedrooms were not cleaned. (*Id.*) The parties held another mitigating meeting, in which Taylor asserted that there were nurses who did not tell her when certain patients were discharged. (*Id.*) She also noted that she would try to improve her work performance. (*Id.*) Ultimately, she was suspended one day for this incident. (*Id.*) The other PAR noted that when Triplett was on Taylor's unit around 2:00 p.m.

---

[2] A PAR is a document prepared when an employee has an attendance issue or is involved in an accident. (ECF No. 14-2 at ¶ 6.) Following a PAR, an investigation is conducted into the conduct, a mitigating conference is held with the employee, and then a decision is made as to whether discipline is warranted. (*Id.*)

5

on May 13, she was not present and no one knew her whereabouts. (ECF No. 18-11.)

On June 8 and 22, 2016, Taylor was orally counseled on her use of sick leave. (ECF No. 14-11.) Taylor had previously been counseled on her use of sick leave on December 16, 2015. (*Id.*) On both the December 16 and June 8 Sick Leave Review Forms, Taylor was noted to have had a "consistent pattern of maintaining a zero or near zero balance of sick leave without documentation of the need for such relatively high utilization." (*Id.*) The June 22 Form then specifically indicated that Taylor had taken six undocumented occasions of sick leave from July 1, 2015 through June 21, 2016. (*Id.*)

On or around June 23, 2016, Plaintiff received her end-of-cycle performance evaluation for July 1, 2015 through June of 2016. (ECF No. 14-10.) She received a total rating of 1.73 out of 3, placing her in the "unsatisfactory" range. (*Id.*) In "Tasks to be Achieved," Taylor was told to "work on [her] lateness and taking off." (*Id.*) Thereafter, Taylor was provided with a "Performance Improvement Plan." (ECF No. 14-12.) In addition, on June 23, 2016, Springfield sent Taylor a letter indicating that due to her unsatisfactory score, Code of Maryland Regulations ("COMAR") 17.04.05.03G(1), Disciplinary Actions Related to Employee Performance, was implicated. (ECF No. 14-17.) Accordingly, the Plaintiff was informed that she had one-hundred and eighty days to improve to "meets standards" or she would be terminated. (ECF No. 14-17.)

Less than a month later, on July 7, 2016, Connie Schaeffer, the Human Resources Officer, initiated a PAR against Plaintiff for violating Springfield's policy on hospital keys. (ECF No. 14-13.) The PAR states that Taylor had lost her hospital keys, including keys to the hospital's impatient psychiatric admissions unit, and did not notify her supervisor or

6

complete the required incident report. (*Id.*) A few months later, in October of 2016, Plaintiff received an additional three PARs. On October 4, 2016, she received a PAR as a result of an email Trageser sent the Director of Housekeeping and Nursing Administration. (ECF No. 18-16.) According to the PAR, the email detailed a health risk on Taylor's unit that Trageser believed was a result of Taylor's failure to maintain the appropriate infection control cleaning procedures. (*Id.*) As a result, she was suspended for three days. (*Id.*) The next day, two PARs were initiated against the Plaintiff. One PAR was similar to the October 4, 2016 Report; Trageser had also emailed the Director of Housekeeping and Nursing Administration describing how Taylor had been observed leaving a mop bucket and mop unattended, posing a safety risk to patients. (ECF No. 18-17.) The other October 5, 2016 PAR indicated that management had been informed by both Trageser and the psychologist assigned to Taylor's unit that Taylor was "displaying inappropriate boundaries with the patients on her assigned unit" including "sharing too much personal information with our patients." (ECF No. 14-14.) As a result of this PAR, Taylor received counseling. (*Id.*)

On October 24, 2016, Plaintiff received a ninety-day performance review. (ECF No. 14-15.) She received another score in the unsatisfactory range, this time a 1.50. (*Id.*) Her supervisor, Jeffrey Belt, noted that since Taylor's June 23, 2016 evaluation, she had received two three-day suspensions for "failing to properly carry[ ]out her assigned duties thus posing an infection control risk for patients and staff." (*Id.*) Around two months later, on December 14, 2016, Taylor received another performance review that indicated that her performance remained overall unsatisfactory at a score of 1.59. (ECF No. 14-16.) In the evaluation, Belt noted that Taylor "has not been receptive to education or training and does not take

7

responsibility for safety and effectively carrying out her assigned duties. Unfortunately, Ms. Taylor's performance has not improved since her last rating . . .." (*Id.*)

On January 6, 2017, Plaintiff's employment with the Defendant was terminated. (ECF No. 18-20.) Her Notice of Termination indicated that she was fired under COMAR 17.04.05.03G for failure to improve her performance valuation above "unsatisfactory" within one-hundred and eighty days of her first unsatisfactory review. (*Id.*) The Notice described the incidents that led to Taylor's unsatisfactory rating, and concluded that "[a]fter considering the employee's entire personnel record, the violations cited, the seriousness of her unwillingness to consistently, safely and properly carry out her assigned duties and her mitigating circumstances[,] it has been determined that termination is the only appropriate response." (*Id.*) The Plaintiff then filed a Charge of Discrimination against the Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"), and later filed an Amended Charge on or around June 2, 2017. (ECF No. 1 at ¶ 5.) (*Id.*)

On February 3, 2017, Taylor also appealed her termination to the Secretary of the Department of Budget and Management, which forwarded her case to the Office of Administrative Hearings. (ECF No. 18-21.) After holding a hearing, John J. Leidig, Administrative Law Judge, found that the Defendant lawfully terminated the Plaintiff in compliance with COMAR 17.04.05.03G(1). (*Id.*) On March 8, 2018, Plaintiff filed suit in this Court, alleging that the Defendant discriminated and retaliated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

As of the time Taylor filed this action, on March 8, 2018, she had not received a finding or right to sue notice from the EEOC indicating whether the EEOC's investigation

determined that a violation of Title VII occurred. Before filing suit in this Court, a plaintiff must have either received a right to sue letter, or been entitled to receive a right to sue letter, from the EEOC. *See Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693 (D. Md. 2013) (summarizing cases and concluding that filing suit before receiving a right to sue letter "presents no jurisdictional impediment" so long as the plaintiff was entitled to a right to sue letter). In Maryland, a deferral state, the EEOC is directed to issue a right to sue letter within, at the latest, 240 days of the filing of a charge. *Id.* at 714. Here, the Plaintiff filed her Charges on or around January 13, 2017 and June 2, 2017, and therefore over 240 days passed before Taylor filed her Complaint.

## STANDARD OF REVIEW

Defendant's motion is styled as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the Alternative, for Summary Judgment under Rule 56. A court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If it does so, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Therefore, a motion styled in this manner implicates a court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Sager v. Hous. Com'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012) (quoting 5C Wright & Miller, Federal Practice &

Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.)).

In support of treating the motion as one for summary judgment, the Defendant attached several exhibits. (ECF No. 14.) Although the Plaintiff argues that summary judgment is inappropriate and requests discovery, the Plaintiff also attached several exhibits to her Response to the Motion to Dismiss. (ECF No. 18.) As explained in detail below, in order for Plaintiff to ultimately succeed on her discrimination claim, she must first make out a *prima facie* case by proving, among other things, that her job performance was meeting the Defendant's legitimate expectations. For her retaliation claim, she must prove that a causal connection existed between her alleged protected activity, her complaint of discrimination, and the adverse employment action. Relevant to both of these inquiries are Plaintiff's Personnel Action Records and performance evaluations that show she was not performing at a satisfactory level. Therefore, this Court, in the exercise of its discretion, considers the parties' submissions and treats Defendant's Motion as a Motion for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact only exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. While the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), a court must consider the facts and all reasonable inferences in the light most favorable to the non-moving party. *Judd*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).

## ANALYSIS

### I. Discrimination claim (Count I)

The Plaintiff Taylor's Complaint alleges that the Defendant discriminated against her and treated her less favorably than her Caucasian counterparts in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . .." § 2000e-2(a)(1). Where, as here, the Plaintiff has not presented any direct evidence of discrimination, she must establish her claim by circumstantial evidence through the "pretext" framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

Under the "pretext" framework, the burden is first on Plaintiff to make a *prima facie* case of disparate treatment by proving that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was meeting her employer's legitimate expectations at the time of the adverse employment action; and (4) similarly situated employees outside of her class received more favorable treatment. *Williams v. Silver Spring Volunteer Fire Dept.*, 86 F. Supp. 3d 398, 420 (D. Md. 2015) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). If Taylor makes this showing, the second step places the burden on the employer to assert a "legitimate, non-discriminatory reason" for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the employer meets

this step, the burden then shifts back to the plaintiff to demonstrate that the employer's purported reason was "pretextual." As this Court stated in *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835 (D. Md. 2004), *aff'd sub nom*, 134 F. App'x 627 (4th Cir. 2005), "[w]hile the *McDonnell Douglas* framework involves a shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation of Title VII." 334 F. Supp. 2d at 841.

It is undisputed that as an African-American female, Taylor is a member of a protected class. In addition, her termination is clearly an adverse employment action because it "adversely affect[ed] the terms, conditions, or benefits of [her] employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). As to the PARs, the Defendant argues that they are not adverse employment actions because PARs are not in and of themselves discipline; rather, a PAR "is merely an allegation of wrongdoing that is investigated." (ECF No. 1-1 at ¶ 6.) The Plaintiff does not directly respond to this argument in her Opposition to the Defendant's Motion, but this Court notes that some of the PARs led to the Plaintiff being suspended for multiple days. *See Stoyanov v. Mabus*, 126 F. Supp. 3d 531, 543 (D. Md. 2015) ("The letter of reprimand, *by itself*, does not constitute adverse employment action.") (citation omitted) (emphasis added). Without determining whether the PARs are in fact adverse employment actions, the record is clear that the Defendant is entitled to summary judgment on this claim because the Plaintiff has not proven her *prima facie* case.

To prove a *prima facie* case of disparate treatment, Taylor has the burden of showing, by a preponderance of the evidence, that she was meeting her employer's legitimate job

expectations. *Williams*, 86 F. Supp. 3d at 420. "[T]he *prima facie* case requires the employee to demonstrate 'that he was qualified in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative.'" *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514–15 (4th Cir. 2006) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n. 10 (1st Cir. 1979)). As explained below, the Plaintiff was not meeting the Defendant's legitimate expectations at the time the PARs were issued or when she was discharged, and therefore the Defendant is entitled to summary judgment on this claim. *See McZeke v. Horry County*, No. 13-2320, 609 F. App'x 140 (4th Cir. May 1, 2015) (affirming the district court's grant of summary judgment against the plaintiff on his discriminatory discharge claim because he failed to prove that he was meeting the employer's legitimate expectations).

Taylor emphasizes that from 2007 through 2015, she received scores on her mid-cycle and end-of-cycle performance evaluations in the satisfactory range. This Court notes, however, that on her last satisfactory end-of-cycle evaluation, covering July 1, 2014 through June of 2015, Taylor received a total rating of 1.90—just 0.15 short of an unsatisfactory score. (ECF No. 18-7.) Further, on that evaluation, Taylor's supervisor identified "Tasks to be Achieved" as coming to work on time and using less leave, and he otherwise indicated that she needed to work on not being late and absent. (*Id.*)

After this review, the Plaintiff's misuse of leave time and failure to perform her job duties were documented multiple times through PARs and reports that she was orally counseled on her misuse of sick leave. These events resulted in Taylor receiving an unsatisfactory score on her end-of-cycle evaluation for July 1, 2015 through June of 2016,

with a score of 1.73. (ECF No. 14-10.) The unsatisfactory score triggered Code of Maryland Regulations ("COMAR") 17.04.05.03G(1), and Taylor was informed that she had one-hundred and eighty days to improve to a satisfactory rating. About a month later, however, she received a Notice of Disciplinary Action for violating Springfield's policy on hospital keys (ECF No. 14-13) and three PARSs (ECF Nos. 14-14, 18-16, 18-17). At her ninety and one-hundred and eighty day reviews, her performance evaluations indicated that she remained at an unsatisfactory score. As a result, her employment was terminated. When she appealed her termination to the Secretary of the Department of Budget and Management, an administrative law judge held a hearing and determined that the Defendant lawfully terminated the Plaintiff in compliance with COMAR 17.04.05.03G(1).[3] (ECF No. 18-21.)

Taylor does not attempt to argue that the performance evaluations did not reflect the Defendant's legitimate expectations. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 517 (4th Cir. 2006) ("[W]here application of the qualification or expectation element of the *prima facie* case seems to preclude an otherwise meritorious claim, the plaintiff is free to demonstrate that the employer's qualifications or expectations are not, in fact, 'legitimate.'") There is also no evidence in the record, and in fact the record contradicts, Taylor's argument that she was

---

[3] The Defendant also argues that the Plaintiff's Complaint is barred by the doctrine of collateral estoppel given the findings of fact and conclusions of law made by the ALJ. (ECF No. 14 at 19-20.) Under Maryland law, for collateral estoppel to bar relitigation of an issue, the defendant must demonstrate that (1) "the issue decided in the prior adjudication [was] identical with the one presented in the action in question"; (2) "there [was] a final judgment on the merits"; (3) "the party against whom the plea is asserted [was] a party or in privity with a party to the prior adjudication"; and (4) "the party against whom the plea is asserted [was] given a fair opportunity to be heard on the issue." *Garrity v. Maryland State Bd. of Plumbing*, 447 Md. 359, 135 A.3d 452, 459 (2016). As the Plaintiff notes, the ALJ's Decision explicitly concerned whether the Defendant complied with COMAR, not whether Taylor was subject to unlawful discrimination or retaliation as is at issue here. (ECF No. 18-21 at 9.) Accordingly, this argument is without merit.

14

targeted by Dan Triplett because of her race after her conversation with Trageser on May 16, 2016.

Taylor argues that racial animus is evident in this case because Triplett did not "target" her until after he learned that she complained to Trageser on May 16, 2016 about discrimination and called Triplett "the white guy." (ECF No. 18-1 at 12.) The Plaintiff's performance issues, however, were documented prior to her meeting with Trageser on May 16, 2016. First, as explained above, Taylor's 2014-2015 end-of-year evaluation indicated that there were problems with her use of leave time and that she was often late, or absent, to work. (ECF No. 18-7.) In addition to her evaluation, she was counseled on her use of sick leave on December 16, 2015. (ECF No. 14-11.) Second, on May 13, 2016, three days prior to the meeting with Trageser, three separate individuals—including Trageser, a multi-racial female—submitted Clinical-Support Services Statement Forms indicating that they had observed Taylor the day prior around 2:30 p.m. sitting in a chair in the hallway with her eyes closed and her head down. (ECF Nos. 14-4, 14-5, 14-6.) These three accounts were the basis of Triplet's PAR that he generated on May 17, 2016. (ECF No. 14-3.) The other PARs that Triplet initiated that day concerned his observations on May 13, 2016 of Taylor's unit "in an unacceptable state in terms of cleanliness" and Taylor's absence around 2:00 p.m. (ECF Nos. 14-7, 18-11.) This is consistent with Taylor stating during the May 16 meeting that Triplett and supervisors had been on her unit the Friday before. Accordingly, the PARs initiated a few days after Taylor's meeting with Trageser concerned conduct that occurred *prior to* the meeting, and were supported with accounts by third parties.

Finally, the record contains numerous examples of Plaintiff failing to properly perform her job duties after her first unsatisfactory work performance rating. Less than a month after her unsatisfactory 2015-2016 end-of-cycle performance evaluation, Schaeffer, the Human Resources Officer, filed a PAR after Plaintiff violated Springfield's policy on hospital keys. In October of 2016, Trageser prompted two PARs against the Plaintiff for failing to meet certain cleanliness standards on her unit. Finally, Triplett initiated a PAR after Trageser and the unit's psychologist observed Taylor "displaying inappropriate boundaries with the patients on her assigned unit" including "sharing too much personal information with our patients." (ECF No. 14-14.) The Plaintiff's Notice of Termination then identified both the causes and explanation for the termination of her employment. (ECF No. 18-20.) For all of these reasons, there are no genuine issues of material fact concerning Plaintiff's failure to meet the Defendant's legitimate expectations when she received the PARs or was terminated, and she has not otherwise carried her burden of proving she was discriminated against in violation of Title VII.[4] Accordingly, because the Plaintiff has not established a *prima facie* case of discrimination under Title VII, the Defendant's Motion for Summary Judgment on the Plaintiff's discrimination claim (Count I) is GRANTED.

## II. Retaliation claim (Count II)

This Court now turns to the Plaintiff's claim that she was retaliated against for

---

[4] As to the fourth prong of a *prima facie* case of disparate treatment, the Plaintiff has neither adequately alleged nor presented any evidence that similarly situated employees outside of her protected class received more favorable treatment. *Williams*, 86 F. Supp. 3d at 420 (D. Md. 2015). In her Response to the Motion to Dismiss, the Plaintiff conceded that two of the three alleged comparators referenced in the Complaint are not similarly situated. (ECF No. 18-1 at 12.) As to the third alleged comparator, the Plaintiff has only provided this Court with the vague, conclusory allegations that there was a white male housekeeper who had worked on the unit before her and "did not do as good [of] a job as [her]," but was not disciplined for his "work failures." (ECF No. 18-4 at ¶ 7.) This is insufficient to satisfy a showing that a similarly situated individual was treated more favorably than Taylor.

16

engaging in the protected activity of complaining to Trageser about race and gender discrimination. A plaintiff may also use the *McDonnell Douglas* burden-shifting approach to prove a retaliation claim. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000). In order to establish a prima facie case of retaliation, a plaintiff must show that "(1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997); *see also McKinney v. G4S Government Solutions, Inc.*, No. 16-1498, 711 F. App'x (4th Cir. Oct. 19, 2017). Regarding the third prima facie element, Title VII requires a plaintiff to show "but for" causation. *Univ. of Tex. Southwestern Med. Ctr. V. Nassar*, 133 S. Ct. 2517 (2013).

The Plaintiff argues that in response to engaging in the protected activity of complaining to Trageser about race and gender discrimination, the Defendant "took immediate adverse action against" her by issuing her multiple disciplinary write ups within two days. (ECF No. 1 at ¶¶ 20-21.) The Plaintiff's argument ignores, however, that as explained above, the PARs issued to the Plaintiff after her conversation with Trageser were based on conduct that occurred *prior to the meeting*. Moreover, the first PAR was based off of observations by third parties, the three nursing employees. The second and third PARs were initiated by Triplett and corroborated by Taylor's statements to Trageser that he had been on her unit the Friday before, which prompted Taylor's meeting with Trageser in the first instance. The PARs themselves then did not result in any disciplinary action until after the allegations were investigated and a mitigating conference was held with Taylor. (ECF No. 14-2 at ¶ 6.) Therefore, even assuming that the PARs constituted adverse employment

17

actions and Triplett knew about Taylor's conversation with Trageser when he issued them, there is no genuine dispute of fact that Taylor's conversation was *not* the but-for cause for the PARs. Rather, her conduct prior to Taylor's conversation with Trageser formed their basis. As to Plaintiff's termination, for the reasons explained above the record is clear that Plaintiff was terminated only after her evaluation ratings became unsatisfactory and she failed to improve to satisfactory within one-hundred and eighty days as outlined by COMAR 17.04.05.03G(1). Therefore, Plaintiff has not proven a *prima facie* case of retaliation and the Defendant's Motion for Summary Judgment is GRANTED as to this claim (Count II).

## CONCLUSION

For the reasons stated above, Defendant's Motion (ECF No. 15), treated as one for Summary Judgment, is GRANTED and Judgment is ENTERED in favor of the Defendant. A separate order follows.

Dated: November 1, 2018

*/s/ Richard D. Bennett*

Richard D. Bennett
United States District Judge